---

SO ORDERED,

*Neil P. Olack*

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: February 27, 2017**

The Order of the Court is set forth below. The docket reflects the date entered.

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

| | |
|---|---|
| **OPUS MANAGEMENT GROUP** | **CASE NO.  16-00297-NPO** |
| **JACKSON LLC, ET AL.,** | **JOINTLY ADMINISTERED** |
| | |
| **DEBTORS.** | **CHAPTER   11** |

**MEMORANDUM OPINION AND ORDER (1) SUSTAINING THE OBJECTION OF OPUS MANAGEMENT GROUP JACKSON, LLC TO PROOF OF CLAIM OF WORLD HEALTH INDUSTRIES, INC. – CLAIM NO. 5 AND (2) DENYING THE WORLD HEALTH INDUSTRIES, INC.'S MOTION TO COMPEL ASSUMPTION OR REJECTION OF THE MASTER SETTLEMENT AGREEMENT**

This matter came before the Court for hearing on January 18, 2017 (the "Hearing"), on the Objection of Opus Management Group Jackson, LLC to Proof of Claim of World Health Industries, Inc. – Claim No. 5 (the "Claim Objection") (Dkt. 554) filed by Opus Management Group Jackson, LLC (the "Debtor");[1] the World Health Industries, Inc.'s Response to Objection

---

[1] The chapter 11 cases of the following affiliated debtors have been administratively consolidated pursuant to the Order Granting Motion of Opus Management Group Jackson, LLC for Order Directing Joint Administration of Affiliated Cases Pursuant to Bankruptcy Rule 1015(b), dated March 4, 2016 (the "Consolidation Order") (Dkt. 114):  Rx Pro of Mississippi, Inc., d/b/a McDaniel Pharmacy (the "McDaniel Pharmacy Bankruptcy Case") (Case No. 16-00288-NPO); OpusRx, LLC (the "OpusRx Bankruptcy Case") (Case No. 16-00291-NPO); Estonna Management LLC, d/b/a The Brooks Pharmacy and d/b/a The Pharmacy at BCHC and d/b/a Vitality Compounding Pharmacy and d/b/a Vitality Pharmacy (the "Estonna Management Bankruptcy Case") (Case No. 16-00292-NPO); Rx Pro Pharmacy & Compounding, Inc., d/b/a OpusRx, a Florida Corporation (the "Hallandale Bankruptcy Case") (Case No. 16-00294-NPO);

to Proof of Claim (the "Claim Objection Response") (Dkt. 581) filed by World Health Industries, Inc. ("WHI"); the Joinder in Objection of Opus Management Group Jackson, LLC to Proof of Claim of World Health Industries, Inc. – Claim No. 5 [Dkt. #554] (the "Claim Objection Joinder") (Dkt. 595) filed by Mitchell Chad Barrett ("C. Barrett"), Jonnita Barrett ("J. Barrett"), and Farm007 Holdings, LLC ("Farm007"); the World Health Industries, Inc.'s Motion to Compel Assumption or Rejection of the Master Settlement Agreement (the "Motion to Compel") (Dkt. 598) filed by WHI; the Objection of the Debtors to World Health Industries, Inc.'s Motion to Compel Assumption or Rejection of the Master Settlement Agreement [Dkt. #598] (the "Motion Objection") (Dkt. 621) filed by the Debtor; and the World Health Industries, Inc.'s Response to the Objection of the Debtors to World Health Industries, Inc.'s Motion to Compel Assumption or Rejection of the Master Settlement Agreement (the "Response to Motion Objection") (Dkt. 640) filed by WHI in the above-styled jointly administered chapter 11 bankruptcy case (the "Lead Bankruptcy Case").[2]   At the Hearing, Stephen W. Rosenblatt ("Rosenblatt"), Christopher R.

---

Care Rx Pharmacy Group, L.L.C. (the "Care Rx Bankruptcy Case") (Case No. 16-00295-NPO); World Health Jets LLC (the "World Health Jets Bankruptcy Case") (Case No. 16-00296-NPO); and Opus Management Group Jackson LLC (Case No. 16-00297-NPO) (collectively, with the exception of the Lead Bankruptcy Case, the "Affiliated Bankruptcy Cases"). A similar order was entered in each of the aforementioned Affiliated Bankruptcy Cases. The docket in the Lead Bankruptcy Case will be cited as "(Dkt. ___)." The docket in the Affiliated Bankruptcy Cases will be cited by the case name and the number of the docket entry. For example, the docket in the Hallandale Bankruptcy Case will be cited as "(Hallandale Bankruptcy Case Dkt. ___)."

[2] Also set for hearing was the Application of World Health Industries, Inc. for an Order Allowing Administrative Expense Claim and Compelling Payment of Same (Estonna Management Bankruptcy Case Dkt. 128); the Objection of Estonna Management LLC d/b/a The Brooks Pharmacy d/b/a The Pharmacy at BCHC and d/b/a Vitality Compounding Pharmacy and d/b/a/ Vitality Pharmacy to Application of World Health Industries, Inc. for an Order Allowing Administrative Expense Claim and Compelling Payment of Same [Dkt. #128] (Estonna Management Bankruptcy Case Dkt. 142); the Corrected Response to Objection of Estonna Management, LLC to Application of World Health Industries, Inc. for an Order Allowing Administrative Expense Claim and Compelling Payment of Same (Estonna Management Bankruptcy Case Dkt. 155); the Joinder in Objection of Estonna Management LLC d/b/a The

Maddux ("Maddux"), and Thomas M. Hewitt represented the Debtor; and David W. Houston, IV

("Houston") and John Lassiter represented WHI.  After fully considering the matter, the Court

finds as follows:

---

Brooks Pharmacy and d/b/a The Pharmacy at BCHC and d/b/a Vitality Compounding Pharmacy and d/b/a/ Vitality Pharmacy to Application of World Health Industries, Inc. for an Order Allowing Administrative Expense Claim and Compelling Payment of Same [Dkt. #142] (Estonna Management Bankruptcy Case Dkt. 163); the Application of World Health Industries, Inc. for an Order Allowing Administrative Expense Claim and Compelling Payment of Same (Hallandale Bankruptcy Case Dkt. 137); the Objection of Rx Pro Pharmacy and Compounding, Inc., d/b/a OpusRx, to Application of World Health Industries, Inc. for an Order Allowing Administrative Expense Claim and Compelling Payment of Same [Dkt. #137] (Hallandale Bankruptcy Case Dkt. 163); the Corrected Response to Objection of Rx Pro Pharmacy & Compounding, Inc., d/b/a OpusRx to Application of World Health Industries, Inc. for an Order Allowing Administrative Expense Claim and Compelling Payment of Same (Hallandale Bankruptcy Case Dkt. 189); the Joinder in Objection of Rx Pro Pharmacy & Compounding, Inc., d/b/a OpusRx to Application of World Health Industries, Inc. for an Order Allowing Administrative Expense Claim and Compelling Payment of Same [Dkt #163] (Hallandale Bankruptcy Case Dkt. 199); the Application of World Health Industries, Inc. for an Order Allowing Administrative Expense Claim and Compelling Payment of Same (World Health Jets Bankruptcy Case Dkt. 122); the Objection of World Health Jets LLC to Application of World Health Industries, Inc. for an Order Allowing Administrative Expense Claim and Compelling Payment of Same [Dkt. #122] (World Health Jets Bankruptcy Case Dkt. 126); the Corrected Response to Objection of World Health Jets, LLC to Application of World Health Industries, Inc., for an Order Allowing Administrative Expense Claim and Compelling Payment of Same (World Health Jets Bankruptcy Case Dkt. 135); the Joinder in Objection of World Health Jets, LLC to World Health Industries, Inc. Application for an Order Allowing Administrative Claim and Compelling Payment of Same [Dkt #126] (World Health Jets Bankruptcy Case Dkt. 140); the Application of World Health Industries, Inc. for an Order Allowing Administrative Expense Claim and Compelling Payment of Same (Dkt. 547); the Objection of Opus Management Group of Jackson LLC to Application of World Health Industries, Inc. for an Order Allowing Administrative Expense Claim and Compelling Payment of Same [Dkt. #547] (Dkt. 562); the Corrected Response to Objection of Opus Management Group Jackson LLC to Application of World Health Industries, Inc., for an Order Allowing Administrative Expense Claim and Compelling Payment of Same (Dkt. 588); and the Joinder in Objection of Opus Management Group Jackson, LLC to World Health Industries, Inc. Application for an Order Allowing Administrative Expense Claim and Compelling Payment of Same [Dkt #562] (Dkt. 602).  The debtors in each of the Affiliated Bankruptcy Cases will be referred to collectively as "the Affiliated Debtors").

**Jurisdiction**

The Court has jurisdiction over the parties to and the subject matter of the Lead Bankruptcy Case pursuant to 28 U.S.C. § 1334. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A) and (B). Notice was proper under the circumstances.

**Facts**

The underlying facts related to the matters currently before the Court are largely undisputed. In order to settle a lawsuit in the Chancery Court of Hinds County, Mississippi prior to the filing of the Lead Bankruptcy Case and the Affiliated Bankruptcy Cases, WHI, certain Affiliated Debtors, and several other parties entered into a Master Settlement & Release Agreement (the "MSA") (Mot. Ex. A)[3] that effectuated a "corporate divorce." (Dkt. 410 at 4); (Mot. Obj. at 2). The MSA outlined the transfer of ownership in various corporate entities related to WHI. (Mot. Exs. B1-B5). Additionally, certain "ownership transfer and related documents" (the "Assignment Agreements")[4] were executed in connection with the MSA, which transferred and/or assigned membership or stock interests in various companies to C. Barrett. (Mot. Obj. at

---

[3] Citations to exhibits will be as follows: (1) citations to exhibits to the Motion to Compel will be cited as "(Mot. Ex. ___);" (2) Citations to exhibit entered into evidence by WHI at the Hearing will be cited as "(WHI Hr'g Ex. 1);" and (3) citations to exhibits entered into evidence at the Hearing by the Debtor will be cited as "(Debtor Hr'g Ex. ___)."

[4] The Assignment Agreements, which are exhibits to the MSA, were entered into evidence at the Hearing along with the MSA. (WHI Hr'g Ex. 1). The relevant Assignment Agreements (involving the Debtor and/or Affiliated Debtors, or WHI) include: (1) the LLC Interest Assignment Agreement of Care Rx Pharmacy Group, LLC; (2) the LLC Interest Assignment Agreement of Estonna Management LLC; (3) the Stock Assignment Agreement of Rx Pro Pharmacy & Compounding, Inc.; (4) the Stock Assignment Agreement of RxPro of Mississippi, Inc.; (5) the LLC Interest Assignment Agreement of World Health Jets, LLC; (6) the LLC Interest Assignment Agreement of WHI, LLC; and (7) the Stock Assignment Agreement of World Health Industries, Inc.

3).   WHI argues that the Debtor should be compelled to assume or reject the MSA under § 365[5] while the Debtor argues that it is not a party to the MSA, and, therefore, should not be compelled to assume or reject it.

The Debtor filed the Lead Bankruptcy Case and the Affiliated Bankruptcy Cases on February 2, 2016 (Dkt. 1); (Affiliated Bankruptcy Cases Dkts. 1).  The Debtor and the Affiliated Debtors filed separate petitions for relief in the Lead Bankruptcy Case and in each of the Affiliated Bankruptcy Cases.  On March 4, 2016, the Court entered the Consolidation Order, administratively consolidating the Affiliated Bankruptcy Cases, with the Lead Bankruptcy Case being the "Lead Case."  (Consolidation Order at 2).

## I.     POC and Claim Objection

The Consolidation Order entered in the Lead Bankruptcy Case, also referred to as the "Opus Management Case," provided that "any creditor of the Debtor must file any proof of claim in the Opus Management Case, which proof of claim shall be maintained in the claims register of the Opus Management Case."  (Consolidation Order at 3).  Similar orders were entered in each of the Affiliated Bankruptcy Cases, requiring that the proofs of claim against the Affiliated Debtors be filed in the bankruptcy case of that Affiliated Debtor.  (McDaniel Pharmacy Bankruptcy Case Dkt. 121); (OpusRx Bankruptcy Case Dkt. 127); (Estonna Management Bankruptcy Case Dkt. 96); (Hallandale Bankruptcy Case Dkt. 99); (Care Rx Bankruptcy Case Dkt. 96); (World Health Jets Bankruptcy Case Dkt. 95).  Thus, although the Consolidation Order required all pleadings to be filed in the Lead Bankruptcy Case, creditors were required to file proofs of claims in the corresponding bankruptcy case.

---

[5] Hereinafter, all code sections refer to the Bankruptcy Code found at title 11 of the U.S. Code unless indicated otherwise.

The last day for non-governmental creditors to file a proof of claim in the Lead Bankruptcy Case and the Hallandale Bankruptcy Case was June 1, 2016. (Dkt. 30); (Hallandale Bankruptcy Case Dkt. 29). WHI filed a proof of claim (the "POC") (Bankr. Cl. No. 5-1) in the Lead Bankruptcy Case on May 31, 2016. In the POC, WHI provided that it held a claim against "Rx Pro Pharmacy & Compounding, Inc." ("Hallandale")[6] in the amount of $34,500.00 for "money loaned." (POC at 2).[7] WHI did not attach any supporting documentation to the POC. In the "Attachment" to the POC, WHI provided that "[t]he documents supporting this Proof of Claim will be filed with the court under seal as Exhibits "A"-"C" thereto, subject to approval of World Health Industries, Inc.'s Motion for Leave to File Exhibits "A"-"C" to the Proof of Claim Under Seal." (POC at 4).

On June 1, 2016, WHI filed the Motion for Leave to File Documents in Support of World Health Industries, Inc.'s Proof of Claim Under Seal (the "Motion to File POC Documents Under Seal") (Dkt. 402). In the Motion to File POC Documents Under Seal, WHI requested the Court's permission to allow it to file under seal: (1) the MSA; (2) a promissory note known as the "Shennaco Note" (the "Shennaco Note"), which is referenced in the MSA; and (3) a wire confirmation that confirms payment of $100,000.00 to Shennaco Investment Corp. (Motion to File POC Documents Under Seal at 1-3). According to WHI, these documents "are confidential documents related to litigation settlements involving some entities and individuals who are not party [*sic*] to the bankruptcy. These documents include sensitive information about WHI's business relationships and litigation efforts." (*Id.* at 1). At a hearing on the Motion to File POC

---

[6] See *supra* note 8.

[7] WHI filed a proof of claim in the McDaniel Pharmacy Bankruptcy Case on December 12, 2016 (McDaniel Pharmacy Bankruptcy Case Cl. No. 9-1).

Documents Under Seal, WHI withdrew its request to file any documents other than the MSA under seal.  (Dkt. 410 at 2).

The Court entered the Order Denying: (1) Motion for Leave to File Documents in Support of World Health Industries, Inc.'s Proof of Claim Under Seal and (2) Motion for Leave to File Document in Support of World Health Industries, Inc.'s Objection to Motion for an Order Approving Settlement Among Certain Debtors, M. Chad Barrett and John Adams, D.O. Under Seal (the "Order Denying Request to File POC Documents Under Seal") (Dkt. 410) on June 7, 2016.  Citing the strong presumption in favor of public access to court records and the exceptions to the presumption, the Court concluded that "WHI waived the confidentiality of the MSA by making the MSA an issue in this contested matter."  (*Id.* at 6).  "By analogy, the Fifth Circuit Court of Appeals has held that the attorney-client privilege 'was intended as a shield, not a sword' and that when confidential communications are made a material issue in a judicial proceeding, 'fairness demands treating the defense as a waiver of the privilege.'"  (*Id.* at 6-7) (citing *Conkling v. Turner,* 883 F.2d 431, 434 (5th Cir. 1989); *Nguyen v. Excel Corp.,* 197 F.3d 200, 207 n.18 (5th Cir. 1999)).  The Court concluded that "the holder of confidential commercial information, like the holder of the attorney client privilege, may waive the narrow protection afforded by 11 U.S.C. § 107(b) by placing the protected information 'at issue,'" which WHI did by "asserting in its Settlement Objection that the proposed Settlement Agreement will result in a breach of the MSA and that the validity of the commencement of the [Lead] Bankruptcy Case depends on the validity of the MSA."  (*Id.* at 7).   The Court also noted that it would be unfair to allow WHI to "insist on the confidentiality of the MSA when it intends to use the MSA as the primary, if not sole, basis for its opposition to the Settlement Agreement."  (*Id.*).   Additionally, WHI's waiver of the confidentiality of the MSA occurred when it quoted from certain portions of the MSA.  (*Id.*).

On November 2, 2016, the Debtor filed the Claim Objection, arguing that "Opus Management Group Jackson, LLC, is not an obligor to WHI for any 'money loaned,' and the Debtor has no agreement of any kind with WHI." (Claim Obj. at 4).   Citing § 502(b)(1), the Debtor argued that "the WHI claim must be disallowed because 'such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured.'" (*Id.* at 7).   The Debtor also argued that WHI failed to comply with the Federal Rules of Bankruptcy Procedure because it "failed to attach any documentation to the [POC] and did not allege that the writing on which the [POC] was based had been lost or destroyed." (*Id.*).   Additionally, according to the Debtor, WHI filed the POC in the incorrect case because to the extent that the POC exists, it "is not against the Debtor, Opus Management Group Jackson, LLC, but may be against another entity with whom WHI dealt." (*Id.*).   C. Barrett, J. Barrett, and Farm007 filed the Claim Objection Joinder on December 7, 2016, "joining with, adopting, and asserting herein all matters and arguments raised in the subject Objection, and requesting the same relief sought therein." (Claim Obj. Joinder at 1).

WHI filed the Claim Objection Response on November 23, 2016.   WHI argued that it filed the POC "out of an abundance of caution, since Hallandale's[8] obligation to pay the $34,500.00 owed has been raised previously in WHI's *Application for an Order Allowing Administrative Expense Claim and Compelling Payment of Same.* [Dkt. 137, Case No. 16-00294-NPO]." (Claim Obj. Resp. at 4).   According to WHI, therefore, it timely filed an administrative expense claim against Hallandale, which "is part of the MSA, which is an executory contract which the Debtor has announced its intent to enforce." (*Id.*).   Additionally, WHI contended that the "Debtor has

---

[8] "Hallandale" is the entity known as Rx Pro Pharmacy & Compounding, Inc., d/b/a OpusRx, a Florida Corporation (Hallandale, Florida) (Case No. 16-00294-NPO).

taken the narrowest of views related to the unsecured proof of claim filing, claiming that []
because the MSA was not attached to the [POC] itself, [WHI] has not met the requirements of
Rule 3001." (*Id.* at 5).   Because WHI "produced the MSA on multiple occasions to Debtors,"
and the POC is "directly provided for in the express terms of the MSA," WHI argued that it
complied with Federal Rule of Bankruptcy Procedure 3001 ("Rule 3001").   (*Id.*).   After the Court
entered the Order Denying Request to File POC Documents Under Seal, the MSA was "provided
to the Debtors and Debtors' counsel . . . for review and consideration."   (*Id.* at 6).   "Thus, as soon
as it was practicably understood that the documents would not be treated confidentially, WHI
produced them to Hallandale and has therefore met every burden of proof and obligation under
Rule 3001 . . . ."   (*Id.*).

In regard to the Debtor's argument in the Claim Objection that WHI violated the
Consolidation Order by filing the POC in the Lead Bankruptcy Case, WHI characterized the
situation as the POC being "erroneously given the wrong case number."   (*Id.* at 7).   WHI argued
that "there was no prejudice to the Debtor Hallandale, who was noticed and referenced in the
Proof of Claim itself and has been provided the MSA on multiple occasions."   (*Id.* at 6).   "Courts
have held that in these very circumstances, when the Proof of Claim is erroneously given the
wrong case number, but the debtor is not prejudiced or surprised, the claim should not be barred."
(*Id.* at 7) (citing *Firearms Import & Export Co. v. United Capitol Ins. Co. (In re Firearms Import
and Export Corp.),* 131 B.R. 1009, 1016 (Bankr. S.D. Fl. 1991)).   WHI contended that the POC
should not be barred because the Debtor and its counsel were provided with a copy of the MSA,
the POC "featured the Debtor's precise name prior to the bar date," and the POC "was also
detailed in the Objection to Settlement filed May 31, 2016 [Dkt. 399, p. 4]."   (*Id.*).

In the event the Court decides to sustain the Debtor's Claim Objection, WHI requested in the Claim Objection Response that because the deadline to file a claim in the Hallandale Bankruptcy Case has now passed, it should be allowed to amend or refile in the Hallandale Bankruptcy Case "under Rule 3003(c)(3) under the test announced in *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 389 (1993)." (*Id.*). According to WHI, based on the facts of the Lead Bankruptcy Case, the Court should grant its request to allow it to amend or re-file the POC in the Hallandale Bankruptcy Case "because excusable neglect exists under the factors annunciated in *Pioneer.*" (*Id.* at 8). The POC "was filed in the registry of the Lead Case, but still identified the Debtor as Hallandale and referenced the MSA. Further, on the same day, WHI filed an Objection to Settlement that referenced the claim and its basis as a creditor." (*Id.* at 9). Thus, according to WHI, "there is no danger of prejudice to the Debtor." (*Id.*).

## II.    Motion to Compel

WHI filed the Motion to Compel on December 9, 2016, seeking a Court order compelling the Debtor to either assume or reject the MSA. (Mot. at 1). According to WHI, each party to the MSA has material obligations remaining, which makes the MSA an executory contract. (*Id.* at 2). Although the Affiliated Debtors have the remaining obligation to perform under a "true-up"[9] provision of the MSA, "several of the Affiliated Debtors have indicated that while they do not intend to assume the MSA, they intend to pursue the collection of the amounts they are conditionally owed by WHI." (*Id.*). WHI contended in the Motion to Compel that the MSA is an executory contract because each party has remaining obligations that if not performed would

---

[9] The true-up provision of the MSA provides that "any funds due to or from the Barrett Entities for the period beginning February 17, 2015 to the Closing Date will be paid within 10 days after the Final Reconciliation (as defined below)." (MSA at 5).

result in a material breach. (*Id.* at 6) (citing *In re Indep. Am. Real Estate, Inc.,* 146 B.R. 546, 552 (Bankr. N.D. Tex. 1992)). WHI argued that even though a debtor is "entitled to some period of time to decide to assume or reject an executory contract," the Court should compel assumption or rejection because the Debtor "should not be able to keep a creditor in limbo . . . ." (*Id.* at 9). "Although WHI does not contest that a Debtor should be afforded some 'breathing space' and may not be required to immediately assume or reject an executory contract upon the filing of its case, WHI believes this time has arrived." (*Id.*). According to WHI, the Court should compel the Debtor to assume or reject within a "reasonable time" under § 365(d)(2), a decision within the Court's discretion. (*Id.* at 10).

The Debtor filed the Motion Objection on January 3, 2017, arguing that the Debtor is not a party to the MSA and that the MSA and Assignment Agreements are not executory contracts. (Mot. Obj. at 2). According to the Debtor, the purpose of the Assignment Agreements was to effectuate the MSA. (*Id.* at 5). The MSA itself, however, is not a contract "of the Debtors," according to the Debtor, because the "Debtors are not counterparties or signatories to the MSA; the Debtors have no performance obligations; and the Debtors are not beneficiaries under the MSA." (*Id.*). The Debtor and Affiliated Debtors executed the Assignment Agreements "merely as an accommodation to [WHI] in the respective [Assignment Agreement], in order to confirm that [WHI] may exercise full shareholder or membership interests in the third-party owned entity." (*Id.* at 5-6). Additionally, the Debtor or Affiliated Debtors have no performance obligations under the MSA, indicating that it is not an executory contract. (*Id.* at 7). Even if the MSA or Assignment Agreements did impose a duty upon the Debtor or Affiliated Debtors, the Debtor argued in the Motion Objection that any obligations were performed when the Assignment Agreements were executed. (*Id.* at 8-9). In the event that the Court decides to grant the Motion

to Compel, the Debtor argued that it should not be compelled to immediately determine whether to assume or reject, but that the Court should set a date for it to assume or reject, "no earlier than six months from the date of the Court's Order." (*Id.* at 10).

On January 13, 2017, WHI filed the Response to Motion Objection, in which it argued that the Court should look to the plain language of the MSA and Assignment Agreements, which will lead it "to the inescapable conclusion that the Debtors are absolutely parties to the MSA." (Resp. to Mot. Obj. at 2).  To support its contention that the MSA is a contract of the Debtor, WHI cited the Assignment Agreements, which incorporate by reference the MSA.  (*Id.* at 5). Based on the incorporation clause contained in the Assignment Agreements, WHI argued that "it is clear that the Debtors are parties to the MSA . . . ." (*Id.*).  WHI further contended that the MSA imposed "material obligations of an on-going nature on the Debtors at the time these cases commenced," evidencing the fact that the MSA is an executory contract.  (*Id.* at 2).  The Debtor, according to WHI, has remaining material obligations under the MSA, meaning that the MSA is an executory contract.  (*Id.* at 6).  WHI cited the true-up provision as the material obligation that remains to be performed.  (*Id.*).  In addition, WHI provided that the Debtor remains obligated "to make 34.5%" of the monthly payments on the Shennaco Note that remains outstanding.   (*Id.* at 7).  Because the MSA is a contract of the Debtor and the parties have remaining obligations, WHI argued that the Debtor should be compelled to assume or reject the MSA in its entirety.  (*Id.* at 10-11).

## III.    Hearing

### A.  WHI

At the Hearing, WHI entered the MSA and the Assignment Agreements into evidence. (WHI Hr'g Ex. 1).  WHI called as a witness Robert Durham ("Durham"), who stated that he

currently serves as the chief financial officer of Aspire Health Medical but that he previously served as the chief strategy officer and the chief financial officer at WHI.

### 1. Argument

Houston argued on behalf of WHI at the Hearing that because the Debtor and each of the Affiliated Debtors signed the Assignment Agreements, which are exhibits to the MSA, they are parties to the MSA. According to Houston, each party has remaining obligations under the MSA, which makes the MSA an executory contract. The MSA and the Assignment Agreements constitute one whole document, which is why WHI filed the Motion to Compel the Debtor to either assume or reject it in its entirety—because the Debtor became a party to MSA by executing the Assignment Agreements. Houston also contended that the Debtor is a party to the MSA by virtue of the fact that C. Barrett is a 100% owner, and, therefore, he had the authority to bind the Debtor.[10]

Because the Assignment Agreements incorporate the MSA by reference, Houston argued that the documents should be read and construed together. The Debtor has remaining obligations under the true-up provision and the Shennaco Note, evidencing the fact that it is an executory contract. In regard to the true-up provision, Houston stated that one check would be written either to or from the Debtor, depending on the results of the true-up. The Debtor also has ongoing obligations pursuant to the Shennaco Note because even though it has made many payments toward the note, there are several payments remaining. Houston contended that the Debtor's actions indicated that it knew it was bound to the terms of the MSA. For example, it made payments on the Shennaco Note and paid attorney's fees pursuant to the MSA. It also attempted

---

[10] The Court does not reach the merits of this argument, but expresses its skepticism regarding Houston's contentions that a person who owns multiple companies binds each one of those companies, as well as himself individually, whenever he signs a document, regardless of the parties named in that document.

to object to the Accounting True-Up Report for the period of February 16 - April 13, 2015 (the "True-Up Report") (Debtor Hr'g Ex. 1), evidencing its belief that it was a party to the MSA. These actions, according to Houston, contradict the Debtor's current argument that it is not a party to the MSA and is not bound to the terms of the MSA.

Although Houston acknowledged that WHI should have filed the POC in the Hallandale Bankruptcy Case rather than in the Lead Bankruptcy Case, WHI filed the POC prior to the bar date established in the Hallandale Bankruptcy Case. After the Court entered the Order Denying Request to File POC Documents Under Seal, the exhibits to the POC were provided to the Debtor. Thus, WHI should be permitted to file the POC in the correct case, according to Houston, because no prejudice will be caused by allowing it to do so.[11]

### 2. Durham Testimony

Durham testified at the Hearing that he is familiar with the MSA and Assignment Agreements, which were created to effectuate a "corporate divorce," because he personally executed the MSA. He stated that the Assignment Agreements were executed simultaneously with the MSA, and were necessary because they reinforced the MSA and required the Debtor and Affiliated Debtors to be bound to make the transfers contemplated in the MSA. The Debtor signed each of the Assignment Agreements at the same time it signed the MSA, according to Durham. This was so because the true-up provision on page four (4) of the MSA, according to Durham, required the "Barrett Entities"[12] to be included in the process. Durham noted the

---

[11] Notably, WHI has not filed a motion seeking permission to file a late proof of claim based on excusable neglect or for any other reason.

[12] The MSA defines the "Barrett Entities" as "[t]he entities in which [C.] Barrett receives assignments of ownership interests under the Transaction Documents . . . ." (MSA at 2). The Barrett Entities, therefore, include the Debtor and the Affiliated Debtors. For the sake of clarity and continuity, the Court will continue to refer to these entities as the "Debtor" or the "Affiliated Debtors."

significance of the integration clauses contained in the Assignment Agreements, which incorporate by reference the MSA. He contended that the MSA itself would be meaningless without the Debtor's participation *via* the Assignment Agreements. Durham stated his belief that because C. Barrett was a majority owner of the Debtor, he had the ability to bind the Debtor to the terms of the MSA.[13]

According to Durham, the Debtor has several ongoing obligations that remain to be performed. First, the Debtor is included in the true-up process contemplated by the MSA, which he said is a remaining obligation of the Debtor. Second, the MSA required the Debtor to pay the Shennaco Note, which is an ongoing obligation because money is still owed. (MSA at 8). Third, the Debtor still owes an ongoing obligation under the "Intellectual Property Rights" section of the MSA, which required the Debtor to provide C. Barrett with certain information. (*Id.* at 9).

**B. Debtor**

The Debtor entered into evidence at the Hearing the following documents: (1) the True-Up Report (Debtor Hr'g Ex. 1); (2) the POC (Debtor Hr'g Ex. 2); and (3) a letter from Stacy E. Thomas at Baker, Donelson, Bearman, Caldwell & Berkowitz, PC regarding the "True Up Report Issued May 26, 2016, by Boolos CPA Firm." (Debtor Hr'g Ex. 3). The Debtor called as witnesses Jack West ("West"), who testified that he is the operations manager of the Debtor, and Carter Smith ("Smith"), who testified that he is a certified public accountant hired by the Debtor to provide accounting support.

**1. Argument**

At the Hearing, Rosenblatt argued on behalf of the Debtor that WHI desires to enforce rights under the MSA to which the Debtor is not a party. All remaining obligations under the

---

[13] *See supra* note 10.

MSA involve the parties to the MSA, which, according to Rosenblatt, are C. Barrett, Tyler Barrett, WHI, Jason Rutland, Christopher Merriwether, James Bennett, Sharon Durham, Angela Nicole Hotard, and Durham.  The Debtor is not a party to the MSA simply because its owner, C. Barrett, executed the MSA.  While the Assignment Agreements are contracts "of the Debtor," the MSA is not, and WHI did not move to compel the Debtor to assume or reject the Assignment Agreements.  The Debtor acknowledged that the Assignment Agreements do incorporate by reference the MSA, but argued that it is bound to the Assignment Agreements with certain terms of the MSA included, not to the actual MSA itself.

Even if the Court finds that the MSA is in fact a contract "of the Debtor," Rosenblatt argued that the Debtor has fully discharged all of its obligations, meaning the MSA would not be an executory contract.[14]  Rosenblatt pointed out that the POC filed by WHI was for "money loaned," which is exempt from the executory contract statute.[15]  If the funds became money loaned, it would not be an executory contract at that point.  Nonetheless, the Debtor's obligation was to execute the Shennaco Note, which it did.  The MSA does not provide that they were responsible for making all of the payments and there were no default provisions.  Additionally, its duty to assign its interests in the Affiliated Debtors was discharged as soon as they executed the Assignment Agreements.

---

[14] The Fifth Circuit Court of Appeals has adopted Professor Vern Countryman's definition of "executory contract": "A contract is executory when 'the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance could constitute a material breach excusing the performance of the other.'"  *Premier Entm't Biloxi LLC v. U.S. Bank Nat'l Ass'n (In re Premiere Entm't Biloxi)*, 445 B.R. 582, 617 (Bankr. S.D. Miss. 2010) (quoting VERN COUNTRYMAN, EXECUTORY CONTRACTS IN BANKRUPTCY: PART I, 57 Minn. L.Rev. 439, 460 (1973); Vern Countryman, EXECUTORY CONTRACTS IN BANKRUPTCY: PART II, 58 Minn. L.Rev. 479 (1974); and citing *Phoenix Exploration, Inc. v. Yaquinto (In re Murexco Petroleum, Inc.)*, 15 F.3d 60, 62-63 n. 8 (5th Cir. 1994)).

[15] Rosenblatt was presumably referring to 11 U.S.C. § 365(c)(2).

Maddux, who also represented the Debtor, argued that the Debtor cannot be assigned duties under the MSA to which it did not agree.  Because the Debtor did not sign the MSA, it cannot be bound to its terms.  While the Debtor can be bound to the terms of the Assignment Agreements, which incorporate the portions of the MSA involving the Debtor, the Debtor cannot be bound to the MSA absent a signed writing.  According to Maddux, the MSA gives context to the Assignment Agreements, but it does not impose new or additional rights upon the Debtor.

Maddux also argued that the POC should not be allowed because WHI filed it in the wrong case and has made no subsequent effort to correct the issue.  A hearing was held on June 2, 2016, on the Motion to File POC Documents Under Seal (the "June Hearing").  Maddux argued that at the June Hearing, WHI knew it filed the POC documents in the wrong case, and has made no effort to correct the issue or file the POC in the correct case.  Additionally, WHI still has failed to attach supporting documentation to the POC as required.  Thus, Maddux argued that the POC should be disallowed.

### 2.  West Testimony

West testified that he is familiar with the MSA through his role as the operations manager of the Debtor.  The Debtor is not a signatory to the MSA, but it did execute the Assignment Agreements.  West stated that because WHI has not granted the Debtor access to a majority of the documents surrounding the MSA and Assignment Agreements, he is unclear about certain details. West reviewed the MSA and Assignment Agreements, and the Debtor has no remaining obligations under either.  According to West, the Debtor discharged its duty to execute the Shennaco Note and the Assignment Agreements as required.  It also discharged any duty it might have had under the MSA pursuant to the intellectual property clause contained therein. Significantly, in regard to the true-up provision, West stated that the Debtor filed an objection to

the True-Up Report and the attorney for Boolos CPA Firm told it that it was not entitled to object because it was not a party to the true-up procedure.  (Debtor Hr'g Ex. 3).  He argued that under the true-up provision of the MSA, the Debtor was not bound to make any of the payments.[16]

### 3.  Smith Testimony

Smith, who was hired by the Debtor to provide accounting support and oversee the organization of the books and accounts (Dkt. 268), testified that he is familiar with the Debtor's books dating back to the execution of the MSA.  Smith testified in detail as to the intricacies of the True-Up Report and its accuracy.  He explained each chart attached to the True-Up Report, and explained whether it evidenced WHI owing money to the Debtor, or vice versa.  Maddux stated at the Hearing that the purpose of Smith's testimony was to demonstrate that the Debtor will need additional time to conduct an independent assessment to determine whether to assume or reject the MSA if the Court were to find that the MSA is an executory contract of the Debtor.

### Discussion

The Debtor objected to the POC, arguing that it was filed in the incorrect case in violation of the Hallandale Consolidation Order.  WHI argued that it should be permitted to file the POC in the correct case because it would not be prejudicial to the Debtor to allow it to do so.  Additionally, WHI filed the Motion to Compel, arguing that the MSA is an executory contract that the Court should compel the Debtor to either assume or reject in its entirety.  The Debtor argued that the MSA is not a contract of the Debtor and, therefore, it cannot be compelled to assume or reject it.  The Court will first address the Claim Objection before ruling on the Motion to Compel.

---

[16] The true-up provision of the MSA provides that "any funds due to or from the Barrett Entities for the period beginning February 17, 2015 to the Closing Date will be paid within 10 days after the Final Reconciliation (as defined below)."  (MSA at 5).  Thus, the true-up provision does not clearly state who would be responsible for paying the funds due.

## I.      Claim Objection Sustained

At this juncture, the POC remains filed in the incorrect case, with no supporting documentation attached.  The Debtor objected to the POC, arguing that it should be disallowed because it was filed in the incorrect case.  The bar date has now passed, and WHI has yet to file the POC in the correct case.  "The filing and allowance of a claim against a bankruptcy estate are governed by 11 U.S.C. § 501 and 11 U.S.C. § 502."  *In re Taylor,* No. 12-11463-NPO, 2013 WL 1276507, at *5 (Bankr. N.D. Miss. Mar. 27, 2013).  Section 1111 provides that a "proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(a)(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated."  11 U.S.C. § 1111(a).  Federal Rule of Bankruptcy Procedure 3003 ("Rule 3003") requires any creditor "whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated" to file a proof of claim "within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."  FED. R. BANKR. P. 3003(c)(2).  A late-filed proof of claim may be disallowed under § 502(b), unless it is permitted to be "tardily" filed under the bankruptcy rules.  11 U.S.C. § 502(b)(9).  WHI was not scheduled; therefore, it was required to file a proof of claim under Rule 3003.

In the Lead Bankruptcy Case, the deadline for creditors to file proofs of claim was June 1, 2016.  WHI filed the POC in the Lead Bankruptcy Case on May 31, 2016, one (1) day before the deadline.  The Consolidation Order required proofs of claim to be filed in the separate Affiliated Bankruptcy Case of the Affiliated Debtor against whom it asserted a claim.  (Consolidation Order at 3).  In the Hallandale Bankruptcy Case, the Order Granting Motion of Rx Pro Pharmacy & Compounding, Inc., d/b/a OpusRx for Order Directing Joint Administration of Affiliated Cases

Pursuant to Bankruptcy Rule 1015(B) [Dkt. #51] (the "Hallandale Consolidation Order") (Hallandale Bankruptcy Case Dkt. 99) required that "any creditor of [Hallandale] must file any proof of claim in the Hallandale Case, which proof of claim shall be maintained in the claims register of the [Hallandale Bankruptcy Case]." (Hallandale Consolidation Order at 3). WHI, however, filed the POC, which was a claim against Hallandale, in the Lead Bankruptcy Case instead. WHI has not filed a motion to allow a late filed proof of claim in the Hallandale Bankruptcy Case. Instead, it simply asserted in the Claim Objection Response that it should be allowed to re-file the POC in the Hallandale Bankruptcy Case. (Claim Obj. Resp. at 7).

The Court will first discuss the proper procedure for seeking an extension of the bar date. If the Court finds that the excusable neglect argument contained in the Claim Objection Response was procedurally proper, the Court will determine whether WHI's failure to timely file the POC in the proper case was the result of excusable neglect. Next, the Court will discuss whether the informal proof of claim doctrine applies, which "permits a bankruptcy court to treat the pre-bar date filings of a creditor as an informal proof of claim that can be amended after the bar date to conform with, *inter alia,* the requirements of Rule 3001(a) of the Federal Rules of Bankruptcy Procedure." *Garza v. JD Foods Inc. (In re Garza),* 222 F. App'x 350, 351-52 (5th Cir. 2007) (citing *Garza v. J.D. Foods, Inc. (In re Garza)*, No. 4:05-CV-694-A, 2006 WL 1317015, at *2 (N.D. Tex. 2006)). Finally, the Court will address the Debtor's argument that WHI's failure to attach supporting documentation to the POC in compliance with Form 410 warrants disallowance of the POC.

### A. Procedure for Seeking Enlargement of Time

As WHI correctly noted in the Claim Objection Response, Rule 3003(c)(3), which authorizes an extension of time in which to file a proof of claim, must be read in conjunction with

Federal Rule of Bankruptcy Procedure 9006(b)(1) ("Rule 9006"), which governs the enlargement of time. *In re Wm. B. Wilson Mfg. Co.,* 59 B.R. 535, 537 (Bankr. W.D. Tex. 1986). Rule 3003(c)(3) provides that the Court may extend the deadline for creditors to file proofs of claim for "cause shown." FED. R. BANKR. P. 3003(c)(3). Pursuant to Rule 9006, the Court may extend the deadline for filing of a proof of claim "on motion made after the expiration of the specified period" if the creditor's "failure to act was the result of excusable neglect." FED. R. BANKR. P. 9006(b)(1).

Simply stated, the deadline for filing proofs of claim may be extended under Rules 3003 and 9006 "on motion made after the expiration of specified period" if the movant bears its burden of showing that the "failure to act was the result of excusable neglect. *In re AMWC, Inc.,* 109 B.R. 210, 212 (Bankr. N.D. Tex. 1989). In other words, upon the filing of a motion for leave to file a proof of claim outside of the deadline established by the Court, the movant bears the burden of proving that its failure to timely file the proof of claim was the result of excusable neglect. Instead of filing a motion, WHI buried its excusable neglect argument within the Claim Objection Response. It presented no evidence to support its contention, despite the fact that it bore the burden of proof. The assertion in the Claim Objection Response that its failure to act was the result of excusable neglect cannot be construed as a request for affirmative relief, which can only be made in a motion. *See In re AMWC, Inc.,* 109 B.R. at 212. To treat WHI's claim as a motion would violate the Debtor's due process rights because it would deprive the Debtor of the opportunity to respond. The Court declines to consider WHI's excusable neglect argument as it is procedurally improper. Moreover, the Court expresses no opinion on the merits of WHI's excusable neglect argument.

**B. Informal Proof of Claim**

Although WHI did not properly characterize its argument as an informal proof of claim argument, the Court characterizes it as such. If the Court finds that the POC constituted an informal proof of claim in the Hallandale Bankruptcy Case, WHI may be permitted to file the POC in the Hallandale Bankruptcy Case as an amendment even though the bar date has passed. The Fifth Circuit has adopted a five-part test for determining whether a pre-bar date filing constitutes an informal proof of claim: (1) the claim is in writing; (2) the writing contains a demand by the creditor on the debtor's bankruptcy estate; (3) the writing evidences an intent to hold the debtor liable for said debt; (4) the writing is filed in the bankruptcy court; and (5) allowing the claim would be equitable under the facts and circumstances of the case. *Nikoloutsos v. Nikoloutsos (In re Nikoloutsos)*, 199 F.3d 233, 236 (5th Cir. 2000).

In order for the Court to find that WHI filed an informal proof of claim in the Hallandale Bankruptcy Case, all five (5) elements of the Fifth Circuit test must be satisfied in the Hallandale Bankruptcy Case. In the Hallandale Bankruptcy Case, the first pleading filed by WHI was the Application of World Health Industries, Inc. for an Order Allowing Administrative Expense Claim and Compelling Payment of Same (the "Hallandale Administrative Application") (Hallandale Bankruptcy Case Dkt. 137). WHI filed the Hallandale Administrative Application on October 21, 2016, well after the June 1, 2016, bar date. The threshold element of the informal proof of claim doctrine—a pre-bar date filing—is not satisfied by the Hallandale Administrative Application. Moreover, although WHI filed the POC in the Lead Bankruptcy Case prior to the bar date, it did not file the POC in the Hallandale Bankruptcy Case as required by the Hallandale Consolidation Order prior to the bar date. The Court is unaware of any precedent that would

allow it to treat the pre-bar date filing in one case as an informal proof of claim in another case. Thus, the informal proof of claim doctrine is inapplicable.

### C.  Failure to Attach Supporting Documentation

Rule 3001 requires a debtor to file a proof of claim that "shall conform substantially to the appropriate Official Form."  FED. R. BANKR. P. 3001(a).  "Rule 3001 provides a description of a proof of claim. The proof must be in writing; set forth the creditor's claim; be executed by the creditor or an authorized agent; attach writings on which the claim, or an interest in the debtor's property that secures the claim, is based; and attach documents evidencing perfection of any security interest."  9 COLLIER ON BANKRUPTCY ¶ 3001.01[1] (16th ed. 2016).  In the case of a non-individual debtor, like the Debtor and the Affiliated Debtors, "a creditor must complete Official Form 410" ("Form 410").  *Id.* ¶ 3001.01[2].  "The creditor must attach any writing that documents an interest in the debtor's property [and] attach any documents that evidence perfection of any security interest in the debtor's property . . . ."  *Id.*  Prior to the 2011 amendments to Rule 3001, "the effect of failure to provide proper documentation of a proof of claim resulted in the claim either being disallowed or losing its *prima facie* validity."  *Id.* Although this is no longer the required result in non-individual debtor bankruptcy cases, a bankruptcy court "may determine that these results are still proper since the revised rule clearly establishes explicit sanctions for individual cases only."  *Id.*

Federal Rule of Bankruptcy Procedure 9009 provides that "the Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alteration as may be appropriate," except as otherwise provided.  FED. R. BANKR. P. 9009.  Form 410 requires creditors to attach "redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, and itemized statements of running accounts, contracts,

judgments, mortgages, and security agreements." Form 410 (available at www.uscourts.gov/forms/bankruptcy-forms). Additionally, "[i]f the documents are not available, explain in an attachment." *Id.* If a creditor complies with Rule 3001 and Form 410, the proof of claim "shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f). Thus, if "an unsecured creditor files a proof of claim that fully complies with Bankruptcy Rule 3001, that claim is deemed prima facie valid and, if the debtor objects to that claim, he or she must produce evidence sufficient to rebut the presumption of validity and establish that the claim should be disallowed pursuant to § 502(b)." *In re DePugh,* 409 B.R. 84, 97 (Bankr. S.D. Tex. 2009). On the other hand, if an unsecured creditor fails to comply with Rule 3001, "the Debtor has no evidentiary burden to overcome when lodging a claim objection pursuant to § 502(b), at which point the burden shifts back to the claimant to prove the underlying validity of its claim by a preponderance of the evidence in order to have its claim allowed." *Id.* at 97-98.

Although it appears that WHI did not comply with Rule 3001 by failing to attach any supporting documentation as required by Form 410, even after the Court entered the Order Denying Request to File POC Documents Under Seal, the Court finds that this issue is now moot. Because the Court holds that WHI's excusable neglect argument is not properly before the Court and that WHI did not file an informal proof of claim in the Hallandale Bankruptcy Case, it is immaterial whether WHI complied with Rule 3001 by filing the POC in the Lead Bankruptcy Case. The POC is not a claim against the Debtor in the Lead Bankruptcy Case, rather, it is a claim against Hallandale. The Court, therefore, concludes that WHI filed the POC in the Lead Bankruptcy Case in violation of the Court's orders. Thus, because the POC will be disallowed for the aforementioned reasons, it is irrelevant whether WHI complied with Rule 3001 and Form 410.

In sum, WHI violated the Hallandale Consolidation Order by filing the POC in the Lead Bankruptcy Case.  WHI was apparently aware that it was required to file proofs of claim in the Affiliated Bankruptcy Cases because it filed a proof of claim in the McDaniel Pharmacy Bankruptcy Case.  (McDaniel Pharmacy Bankruptcy Case Cl. No. 9-1).   WHI failed to properly raise its excusable neglect argument by burying it in the Claim Objection Response instead of filing a motion.  Thus, the only issue before the Court is whether WHI filed an informal proof of claim. The Court finds the informal proof of claim doctrine inapplicable because WHI filed no documents in the Hallandale Bankruptcy Case prior to the bar date.  The Court also notes that WHI has made no effort to file the POC in the Hallandale Bankruptcy Case in the eight (8) months since the expiration of the bar date.  The Court declines to allow a late-filed proof of claim in a case where the creditor violated a Court order by filing the POC in the incorrect case and did not adhere to the bar date established by Rule 3003.  The Claim Objection, therefore, should be sustained.

## II.    Motion to Compel Denied

Under § 365 the trustee, or a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365; *see* 11 U.S.C. § 1107(a).   In order to determine whether the Debtor should be compelled to assume or reject the MSA, the Court must first determine whether the MSA is a contract of the Debtor.  If it is, the Court will then determine whether the MSA is an executory contract and whether the Court should compel its assumption or rejection.  If the MSA is not a contract of the Debtor, however, the inquiry ends, and the Motion to Compel should be denied.

The language of § 365 provides that the trustee or a debtor in possession may assume or reject an executory contract *of the debtor*.  11 U.S.C. § 365(a).  The Debtor and Affiliated Debtors

signed the Assignment Agreements, but did not sign the MSA.  Nonetheless, WHI argued that the Debtor is a party to the MSA because the Assignment Agreements incorporate the MSA by reference. The Debtor argued that although it is a party to the Assignment Agreements, it is not a party to the MSA.

A settlement agreement is a contract, subject to the applicable rules of contract construction and interpretation. *Alford v. Kuhlman Elec. Corp.,* 716 F.3d 909, 912 (5th Cir. 2013) (citing *Guidry v. Halliburton Geophysical Servs., Inc.,* 976 F.2d 938, 940 (5th Cir. 1992)).  "The interpretation of an unambiguous contract is a question of law," and parol or extrinsic evidence will only be considered only when a contract is ambiguous. (*Id.*) (citations omitted).   The Assignment Agreements incorporate the MSA by reference, providing that the Assignment Agreements "shall be deemed to have incorporated by reference the terms of the [MSA] and all of the schedules and exhibits referred to therein to the same extent as if such [MSA] and schedules and exhibits were fully set forth herein."  (Assignment Agreements ¶ 20; *see* WHI Hr'g Ex. 1). "As long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt, the parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document . . . ."  11 WILLISTON ON CONTRACTS § 30:25 (4th ed. 2016).  When a document is incorporated by reference into another document, "[t]he incorporated matter is to be interpreted as part of the writing."  *Id.*

"Under Mississippi law, if a contract incorporates another document by reference, both documents must be read together to give full effect to the intent of the parties."  *Alford*, 716 F.3d. at 913 (quoting *Galey v. World Mktg. Alliance,* 510 F.3d 529, 532 (5th Cir. 2007)).  "Courts applying Mississippi law have found a contract incorporates terms from another agreement where the contract explicitly adopts the entire agreement or explicitly references particular terms in the

agreement." *Id.* (citing *Galey,* 510 F.3d at 532). "Under general contract principles, where a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together." *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.,* 648 F.3d 258, 267 (5th Cir. 2011). In other words, the separate document referenced in another document "will become part of the contract where the contract makes 'clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt.'" *Id.* at 268 (citing 11 WILLISTON ON CONTRACTS § 30:25).

It is evident that the Assignment Agreements incorporated by reference the MSA. Based on the four corners of the Assignment Agreements, the parties intended to incorporate the MSA *via* the specific, unequivocal language of the incorporation clause. This does not mean, however, that the Debtor became a signatory to the MSA itself by virtue of the Assignment Agreements. It is the Assignment Agreements, not the MSA, that bind the Debtor. The MSA became part of the Assignment Agreements, to which the Debtor admits it is a party; therefore, the MSA and the Assignment Agreements must be read together to effectuate the terms of the parties' entire agreement. Assuming, *arguendo,* that § 365 even applies, WHI may seek to compel the assumption or rejection of the Assignment Agreements—not the MSA. The Debtor is not bound to the actual MSA, which it did not sign, but to the Assignment Agreements, which incorporate the MSA. Thus, the Debtor could theoretically possess certain obligations or duties pursuant to the terms of the MSA, but WHI moved to compel the Debtor to assume or reject the improper document. Stated differently, had the Debtor not signed the Assignment Agreements, it would have had no obligations or duties. By signing the Assignment Agreements, the Debtor bound itself to the terms of the Assignment Agreements, which incorporate the MSA. Thus, the MSA is

not a contract of the Debtor, and it is unnecessary to determine whether the MSA is an executory contract.  The Motion to Compel, therefore, should be denied.

## Conclusion

The Court finds that the Claim Objection should be sustained because WHI's excusable neglect argument was procedurally improper.  Additionally, WHI did not file a pleading in the Hallandale Bankruptcy Case prior to the expiration of the bar date; therefore, the informal proof of claim doctrine is inapplicable.  Thus, the Claim Objection should be sustained and the POC should be disallowed.  The Court also finds that the Motion to Compel should be denied because the MSA is not a contract of the Debtor, which is a threshold requirement of § 365.  To the extent that any arguments not addressed in this Opinion were raised by the parties, they are rejected.

IT IS, THEREFORE, ORDERED that the Claim Objection is hereby sustained.

IT IS FURTHER ORDERED that the Motion to Compel is hereby denied.

##END OF ORDER##