# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:  OPUS MANAGEMENT GROUP
         JACKSON, LLC, et al.[1]                  **CASE NO. 16-00297-NPO**

---

**Memorandum Regarding Billing Procedures of Debtors' Counsel and in Support of:**

**OBJECTION OF M. CHAD BARRETT and FARM007 HOLDINGS, LLC TO:**

*SEVENTH INTERIM AND FINAL APPLICATION OF BUTLER SNOW LLP FOR ALLOWANCE OF ADMINISTRATIVE CLAIM FOR COMPENSATION AND REIMBURSEMENT OF NECESSARY EXPENSES [Dkt No. 1046]*
**[Dkt No. 1053]**

---

FOLLOWING a status conference held on January 12, 2018, this Court requested that the parties brief the issue of the failure of Butler Snow in their Fee Application to itemize and allocate time and expenses to each individual debtor in these jointly-administered cases as such was raised in the Objection [Dkt No. 1053] (the "**Objection**") filed by M. Chad Barrett ("**Barrett**"), and Farm007 Holdings, LLC ("**Farm007**") to the *Seventh Interim and Final Application of Butler Snow LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Expenses* (the "**Fee Application**") [Dkt #1046].

## Background

---

[1] The Chapter 11 cases of the following affiliated Debtors have been administratively consolidated for the joint administration pursuant to the Order Granting Motion of Opus Management Group Jackson, LLC for Order Directing Joint Administration of Affiliated Cases Pursuant to Bankruptcy Rule 1015(b), dated March 4, 2014 (Docket #114):  Rx Pro of Mississippi, Inc. d/b/a McDaniel Pharmacy [Case No. 16-00288-NPO]; Opus Rx, LLC [Case No. 16-00291-NPO]; Estonna Management LLC, d/b/a The Brooks Pharmacy and d/b/a The Pharmacy at BCHC and d/b/a Vitality Compounding Pharmacy and d/b/a Vitality Pharmacy [Case No. 16-00292- NPO]; Rx Pro Pharmacy & Compounding, Inc., d/b/a OpusRx [Case No. 16-00294-NPO]; Care Rx Pharmacy Group, LLC [Case No. 16-00295-NPO]; World Health Jets LLC [Case No. 16-00296-NPO]; and Opus Management Group Jackson LLC [Case No. 16-00297-NPO] (collectively, the "Debtors"). A similar Order was entered in each of the Bankruptcy Cases.

On December 20, 2017, counsel for the Debtors, Butler Snow LLP ("**Butler Snow**") filed the Fee Application seeking an order authorizing and directing the payment of (i) compensation in the amount of $57,604.00 for reasonable and necessary legal services rendered to the Debtors from November 1, 2017, to December 6, 2017; (ii) reimbursement for actual and necessary expenses incurred in the amount of $1,256.22; and (iii) granting the final approval for all fees and expenses previously allowed on an interim basis with respect to the Six Compensation Applications previously submitted and approved by the Court in the Allowance Orders prior to this Seventh and Final Application.

Butler Snow seeks allowance and payment of an administrative expense claim or claims premised upon its provision of professional services to the Debtors' as their counsel in the Debtors' bankruptcy cases in the total aggregate sum of $1,678,453.20.

There are two issues addressed herein that were raised in the Objection. First, the failure of Butler Snow to allocate its time and expenses to each of the seven separate debtors in these jointly-administered cases; and second, Butler Snow's allocation of attorneys' fees and expenses on an arbitrary basis.

### Issue No. 1:  The Failure of Butler Snow to Allocate its Billed Time to Each of these Seven Separate Debtors

Each of these seven separate debtors have their own separate creditors and their own equity holders.

In its billings and statements for these bankruptcy cases, Butler Snow does not allocate the time billed (or the expenses) to the individual Debtor cases. This practice makes it impossible to evaluate the factors related to Section 330 of the Bankruptcy Code and Rule 2016 of the Bankruptcy Rules.

Rule 2016(a) reads:

> APPLICATION FOR COMPENSATION OR REIMBURSEMENT. An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application **setting forth a detailed statement** of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity. Unless the case is a chapter 9 municipality case, the applicant shall transmit to the United States trustee a copy of the application.

FRBP 2016(a) (Emphasis Added).

The requirement of Rule 2016 to set forth a "detailed statement" has a purpose – due process – transparency – and, pursuant to 11 U.S.C. § 330, for interested parties to be able to determine reasonableness of compensation, whether the services were necessary to the administration of the bankruptcy case or beneficial to the bankruptcy case at the time the services were rendered, and potential administrative insolvency.

Section 330 of the Bankruptcy Code provides in part:

> **(a)(1)** After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103--
>
> **(A)** reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> **(B)** reimbursement for actual, necessary expenses.

3

**(2)** The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.

**(3)** In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--

    **(A)** the time spent on such services;

    **(B)** the rates charged for such services;

    **(C)** whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    **(D)** whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

    **(E)** with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

    **(F)** whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

**(4)(A)** Except as provided in subparagraph (B), the court shall not allow compensation for--

    **(i)** unnecessary duplication of services; or

    **(ii)** services that were not--

        **(I)** reasonably likely to benefit the debtor's estate; or

        **(II)** necessary to the administration of the case.

11 USC § 330.

Without allocating time and expenses to individual debtors in these jointly administered cases, there is no way to evaluate the factors set forth in Section 330. How is one to determine if the compensation is reasonable when looking at an individual case – or the time spent on the services provided to each case – or whether the services were necessary to the administration of the individual bankruptcy case – or beneficial to it? There is no way to do this.

How is one to determine if an individual case may be rendered administratively insolvent by the payment of fees if there is no way to determine what fees should be charged to which case?

A Houston Bankruptcy Court faced a similar situation with jointly-administered debtors, writing:

> Las Torres's estate generates no cash collateral, as its sole asset is the Undeveloped Tract. The Debtors therefore want to use cash collateral from La Placita's estate to pay the administrative expenses of Las Torres's estate. This, the Court will not allow, despite the fact that the Lender is adequately protected.
>
> The administrative expenses of one jointly administered debtor should not be paid out of the other jointly administered debtor's cash collateral because joint administration does "not affect the substantive rights of claimants or the respective debtor estates." *In re McKenzie Energy Corp.,* 228 B.R. at 874. Administrative expenses incurred in each jointly administered debtor's bankruptcy estate are not treated as a joint debt.
>
> For example, in *In re Eads,* the bankruptcy court ordered the administrative consolidation, not substantive consolidation, of a husband and wife's bankruptcy cases. *In re Eads,* 307 B.R. 219, 224 n. 5 (Bankr.W.D.Mo.2004). Although *Eads* concerns jointly administered bankruptcy cases of a husband and wife, *Eads* is on point and provides guidance on the issue in the case at bar. In *Eads,* a husband and wife filed separate Chapter 7 petitions initiating two bankruptcy cases. *Id.* at 221–22. The same Chapter 7 trustee represented the bankruptcy estates in both cases. *Id.* at 220. Although the Chapter 7 trustee's attorneys' fees were administrative claims, the court concluded that "an administrative expense claim, however, is not a joint debt." *Id.* at 224. The court then held that "although the cases have been administratively consolidated, [the attorneys'] fees are assessable against each bankruptcy estate individually.... The mere fact that the majority of fees were incurred in the administration of a common asset in two different bankruptcy proceedings is simply insufficient to create a joint debt." *Id.* (footnote omitted).
>
> Here, the Debtors' respective Chapter 11 cases are not substantively consolidated [Finding of Fact No. 3]; yet, the $15,000.00 listed as Administrative Expenses on the Cash Collateral Budget is not allocated for each Debtor. [Finding of Fact No. 13.] Although the same attorneys represent

5

> both Debtors, the Court concludes that the attorneys' fees must be allocated to reflect the compensation requested for services rendered to each Debtor.
>
> Professional services rendered to one debtor (i.e., Las Torres) in a jointly administered Chapter 11 case may not be *699 paid using the assets of the other joint debtor's (i.e., La Placita's) estate because when cases are jointly administered, as opposed to substantively consolidated, the assets of each joint debtor are property of separate bankruptcy estates and each estate also has different liabilities.[12] *See In re McKenzie Energy Corp.,* 228 B.R. at 874; *In re Eads,* 307 B.R. at 224. Had these two cases been substantively consolidated, then both the assets of and claims against the respective estates of each Debtor would have been pooled and the resultant common funds could have been used to satisfy the liabilities of both estates. *See In re Babcock & Wilcox Co.,* 250 F.3d at 958 n. 5.
>
> La Placita, not Las Torres, generates the Rents, and the Rents are the property of La Placita's estate, as this Court determined in a previous memorandum opinion. *In re Las Torres Dev.,* 408 B.R. at 887–88. Therefore, the Court concludes that the Rental Income of $47,000.00 listed on the Cash Collateral Budget—i.e., the Rents—should be used to pay only that portion of the $15,000.00 in administrative expenses incurred by La Placita, not Las Torres. For the same reasons, the $1,200.00 in U.S. Trustee fees that Las Torres owes should not be paid using La Placita's cash collateral. By merely listing Administrative Expenses of $15,000.00 without explaining what portion represents charges for services rendered to Las Torres's estate versus La Placita's estate, the Court is unable to ascertain what portion of the $15,000.00 of administrative expenses La Placita's cash collateral should be used to pay such expenses.

*In re Las Torres Development, LLC*, 413 B.R. 687, 698-699 (Bkrtcy.S.D.Tex. 2009).

It is simply unfair to creditors and to equity holders to charge all seven cases for work that only benefits one case or is only performed on or for the benefit of one case.

For example, Barrett and Farm007 would object to most, if not all, of the attorney's fees charged and paid by World Health Jets, LLC (16-00296-NPO) as the time billed did not benefit the estate and was not "reasonably likely to benefit" the estate "at the time at which [they were] rendered," in contravention to the standard of *In re Woerner,* 783 F.3d 266 (5th Cir. 2015). and Section 330 of the Bankruptcy Code.

The failure to allocate the time billed prohibits the creditors and other interested parties to fairly and fully evaluate the subject applications for compensation without unreasonable difficulty in searching for keywords related to the cases. This amounts to block-billing. Colliers explains the reasoning behind the negative view of such lumping or block billing:

> Itemized daily entries which reflect the activity performed, the date, the attorney responsible, a description of the nature and substance of the work performed, and the time expended have become the *sine qua non* of recovery. [citation omitted] When a professional seeks to have fees paid from the debtor's estate, the request for compensation should be based upon detailed, contemporaneous time records that reveal enough information to enable the court to make an informed judgment about specific tasks and the time allotted thereto. [citation omitted] Courts have rejected "block billing" or "lumping" of time entries because it makes it difficult to determine the reasonableness of the time spent. [citation omitted].

3-330 *Collier on Bankruptcy* P330.03[5][a]. The failure of Butler Snow to allocate its time entries to each case amounts to worse obfuscation than block billing. At least with block billing, one knows which case and creditors and equity holders are affected. In the instant case – no one knows – not even Butler Snow.

In short, there is no way to know whether or not the fees charged to and paid by each debtor are reasonable, fair, necessary, or beneficial to those debtor's estates. This is prejudicial to the separate creditors and separate equity holders of each debtor.

### Issue No. 2:    Arbitrary Allocation of Fees and Expenses

The allocation of the fees charged to each debtor is completely arbitrary and there is no way to know whether such allocations are fairly attributable to the individual cases. This creates a conflict of interest among the bankruptcy estates similar to that found in *In re N.S. Garrott & Sons,* 63 B.R. 189 (Bkrtcy.E.D.Ark. 1986), where the Court wrote:

A debtor-in-possession is a fiduciary who owes undivided loyalty to the estate. In re Coastal Equities, Inc., 39 B.R. 304 (Bkrtcy.S.D.Cal.1984). In a Chapter 11 case, a debtor in possession is an entity distinct from the debtor. In re General Coffee Corp., 32 B.R. 23 (Bkrtcy.S.D.Fla.1983). An attorney who represents a debtor-in-possession should not place himself in a position where he may be required to choose between conflicting duties. Woods v. City National Bank, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1940), reh'g denied, 312 U.S. 715, 61 S.Ct. 736, 85 L.Ed. 1145 (1941). In the case of In re Roberts, 46 B.R. 815, 826 (Bkrtcy.D.Utah 1985), the Court stated as follows:

To "hold an adverse interest" means for two or more entities (1) to possess or assert mutually exclusive claims to the same economic interest, thus creating either an actual or potential dispute between the rival claimants as to which, if any, of them the disputed right or title to the interest in question attaches under valid and applicable law; or (2) to possess a predisposition or interest under circumstances that render such a bias in favor of or against one of the entities.

....

To "represent an adverse interest" means to serve as agent or attorney for any individual or entity holding such an adverse interest. 46 B.R. at 827.

*Id.* at 191.

The allocation of fees to each debtor were clearly made to maximize Butler Snow's recovery of attorney fees.

**First Interim Order:**

| | | | |
|---|---|---|---|
| Rx Pro Pharmacy & Compounding, Inc. | 10% | $210,850.95 | $21,085.10 |
| Care Rx Pharmacy Group, LLC | 10% | $210,850.95 | $21,085.10 |
| Estonna Management, LLC | 10% | $210,850.95 | $21,085.10 |
| Rx Pro of Mississippi, Inc. | 25% | $210,850.95 | $52,712.75 |
| Opus Rx, LLC | 10% | $210,850.95 | $21,085.10 |
| Opus Management Group Jackson, LLC | 25% | $210,850.95 | $52,712.75 |
| World Health Jets LLC* | 10% | $210,850.95 | $21,085.10 |

*to be paid by Chad Barrett

8

**Second Interim Order:**

| | | | |
|---|---|---|---|
| Rx Pro Pharmacy & Compounding, Inc. | 10% | $224,341.93 | $22,434.19 |
| Care Rx Pharmacy Group, LLC | 10% | $224,341.93 | $22,434.19 |
| Estonna Management LLC | 10% | $224,341.93 | $22,434.19 |
| Rx Pro of Mississippi, Inc. | 10% | $224,341.93 | $22,434.19 |
| Opus Rx, LLC | 10% | $224,341.93 | $22,434.19 |
| Opus Management Group Jackson LLC | 25% | $224,341.93 | $56,085.49 |
| World Health Jets LLC* | 25% | $224,341.93 | $56,085.49 |

*to be paid by Chad Barrett

**Third Interim Order:**

| | | | |
|---|---|---|---|
| Rx Pro Pharmacy & Compounding, Inc. | 17.5% | $296,927.50 | $51,962.31 |
| Care Rx Pharmacy Group, LLC | 17.5% | $296,927.50 | $51,962.31 |
| Estonna Management LLC | 17.5% | $296,927.50 | $51,962.31 |
| Rx Pro of Mississippi, Inc. | 17.5% | $296,927.50 | $51,962.31 |
| Opus Rx, LLC | 17.5% | $296,927.50 | $51,962.31 |
| Opus Management Group Jackson LLC | 7.5% | $296,927.50 | $22,269.56 |
| World Health Jets LLC* | 5% | $296,927.50 | $14,846.38 |

*to be paid by Chad Barrett

**Fourth Interim Order:**

| | | | |
|---|---|---|---|
| Rx Pro Pharmacy & Compounding, Inc. | 12.5% | $221,901.61 | $27,737.70 |
| Care Rx Pharmacy Group, LLC | 12.5% | $221,901.61 | $27,737.70 |
| Estonna Management LLC | 20% | $221,901.61 | $44,380.32 |
| Rx Pro of Mississippi, Inc. | 30% | $221,901.61 | $66,570.48 |
| Opus Rx, LLC | 15% | $221,901.61 | $33,285.24 |
| Opus Management Group Jackson LLC | 5% | $221,901.61 | $11,095.08 |
| World Health Jets LLC* | 5% | $221,901.61 | $11,095.08 |

*to be paid by Chad Barrett

**Fifth Interim Order:**

| | | | |
|---|---|---|---|
| Rx Pro Pharmacy & Compounding, Inc. | 15% | $99,447.05 | $14,917.06 |
| Care Rx Pharmacy Group, LLC | 15% | $99,447.05 | $14,917.06 |
| Estonna Management LLC | 15% | $99,447.05 | $14,917.06 |
| Rx Pro of Mississippi, Inc. | 25% | $99,447.05 | $24,861.76 |
| Opus Rx, LLC | 15% | $99,447.05 | $14,917.06 |
| Opus Management Group Jackson LLC | 15% | $99,447.05 | $14,917.06 |

**Sixth Interim Order**

| | | | |
|---|---|---|---|
| Rx Pro Pharmacy & Compounding, Inc. | 15% | $95,649.84 | $14,347.48 |
| Care Rx Pharmacy Group, LLC | 15% | $95,649.84 | $14,347.48 |
| Estonna Management LLC | 15% | $95,649.84 | $14,347.48 |
| Rx Pro of Mississippi, Inc. | 25% | $95,649.84 | $23,912.46 |
| Opus Rx, LLC | 15% | $95,649.84 | $14,347.47 |
| Opus Management Group Jackson LLC | 15% | $95,649.84 | $14,347.47 |

**Proposed Allocation in Combined Seventh Interim and Final Application:**

| | | | |
|---|---|---|---|
| Rx Pro Pharmacy & Compounding, Inc. | 15% | $58,860.22 | $ 8,829.03 |
| Care Rx Pharmacy Group, LLC | 15% | $58,860.22 | $ 8,829.03 |
| Estonna Management LLC | 15% | $58,860.22 | $ 8,829.03 |
| Rx Pro of Mississippi, Inc. | 25% | $58,860.22 | $14,715.07 |
| Opus Rx, LLC | 15% | $58,860.22 | $ 8,829.03 |
| Opus Management Group Jackson LLC | 15% | $58,860.22 | $ 8,829.03 |

With one exception (the 2nd Interim Order), in each of the Interim Orders, Estonna and Rx Pro of Mississippi bear the burden of paying 35% to 50% of the attorneys' fees and expenses. Those two cases have always been solvent and have always projected a return to equity holders.

In the 1st and 2nd Interim Orders, Opus Management Group Jackson ("OMGJ") bears 25% of the burden. Presumably, this allocation is related to the cash on hand of

10

OMGJ in the first two interim periods. OMGJ had funds on hand to pay attorneys' fees.  In later periods – it did not, and the allocation was lowered.

In the 2nd interim order, World Health Jets ("WHJ") is allocated 25% of the fees with an asterisk added indicating that reads "to be paid by Chad Barrett" at a time when Butler Snow believed that Mr. Barrett would pay fees allocated to WHJ.  When Butler Snow no longer believed that Mr. Barrett would pay the WHJ fees, the allocations to WHJ dropped to 5% in the 3rd and 4th interim orders.

All of these allocations on all of these interim fee orders was arbitrary and not based on the work performed.  Indeed, there is no way to know how much work was performed on each case because of the issues set forth hereinabove.

## Conclusion

In summary, there is no way to evaluate whether these fees, as billed, meet the applicable standards.  The arbitrary allocation of percentages of fees and expenses to be charged to each case is fundamentally unfair and detrimental to the rights of both creditors and equity holders.

All Bankruptcy Cases should be transparent and there is no transparency regarding Butler Snow's fees.  This is a failure of due process for the creditors and the equity holders as they have potentially been deprived of their rights and property without due process of law and a fair and reasonable opportunity to examine the fees charged to each of these bankruptcy estates.

WHEREFORE, Barrett and Farm007 respectfully request that this Court compel Butler Snow to itemize and allocate each time entry to the case on which such time was spent and to continue any hearing on this matter until such time as Butler Snow provides

11

information that allows Barrett and Farm007 to evaluate the billings to each individual Debtor.

DATED, this the 2nd day of February, 2018.

Respectfully submitted,

**M. CHAD BARRETT and
FARM007 HOLDINGS, LLC**

By its Attorney
JOHN D. MOORE, P.A.

By:     /s/   John D. Moore
        John D. Moore, MSB No. 10610

Law Offices of John D. Moore, P. A.
301 Highland Park Cove, Suite B (39157)
Post Office Box 3344
Ridgeland, Mississippi  39158-3344
601-853-9131
Fax:  601-853-9139
john@johndmoorepa.com
Attorney for Barrett and Farm007

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing, and, therefore served, according to the applicable rules, to the parties set forth in the Electronic Mail Notice List as of the date hereof, including the following:

Ronald H. McAlpin, Esq.
ronald.mcalpin@usdoj.gov

Stephen W. Rosenblatt, Esq.
Stever.rosenblatt@butlersnow.com

Christopher R. Maddux, Esq.
chris.maddux@butlersnow.com

Thomas M. Hewitt, Esq.
Thomas.hewitt@butlersnow.com

William J. Little, Jr.
bill@lentzlittle.com

THIS, the 2nd day of February, 2018.

/s/John D. Moore
John D. Moore