IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| OPUS MANAGEMENT GROUP | ) | CASE NO. 16-00297-NPO |
| JACKSON, LLC, *et al.*[1] | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF BILLING PROTOCOLS AND PROCEDURES OF INTERIM AND FINAL FEE APPLICATIONS OF BUTLER SNOW LLP
[Dkt. ## 1046; 1068; 1071]

Butler Snow LLP ("***Butler Snow***") files this *Memorandum in Support of Billing Protocols and Procedures of Interim and Final Fee Applications of Butler Snow LLP* (the "***Applicant's Memorandum***") pursuant to the *Agreed Order Granting Motion for Continuance and Setting Deadlines* [Dkt. # 1071]. The Applicant's Memorandum is in response to the *Memorandum Regarding Billing Procedures of Debtors' Counsel* [Dkt. # 1068] (the "***Objectors' Memorandum***") filed by M. Chad Barrett ("***Barrett***") and Farm 007 Holdings, LLC ("***Farm 007***", collectively with Barrett, the "***Objectors***") in support of their *Objection of M. Chad Barrett and Farm007 Holdings, LLC* [Dkt. # 1053] (the "***Objection***") on the issue of whether Butler Snow was required to itemize and allocate each of its time entries and expenses to each of the

---

[1] The chapter 11 cases of the following affiliated Debtors were administratively consolidated for joint administration pursuant to that certain *Order Granting Motion of Opus Management Group Jackson, LLC for Order Directing Joint Administration of Affiliated Cases Pursuant to Bankruptcy Rule 1015(b)*, dated March 4, 2016 [Dkt. # 114]: Rx Pro of Mississippi, Inc., d/b/a McDaniel Pharmacy [Case No.16-00288-NPO]; Opus Rx, LLC [Case No. 16-00291-NPO]; Estonna Management LLC, d/b/a The Brooks Pharmacy and d/b/a The Pharmacy at BCHC and d/b/a Vitality Compounding Pharmacy and d/b/a Vitality Pharmacy [Case No. 16-00292-NPO]; Rx Pro Pharmacy & Compounding, Inc., d/b/a OpusRx [Case No. 16-00294-NPO]; Care Rx Pharmacy Group, LLC [Case No. 16-00295-NPO]; World Health Jets LLC [Case No. 16-00296-NPO]; and Opus Management Group Jackson LLC [Case No. 16-00297-NPO]. All Debtors except World Health Jets LLC are hereinafter referred to as the "***Debtors***." These chapter 11 cases for all of the bankruptcy cases listed above except the bankruptcy case of World Health Jets LLC [Case No. 16-00296-NPO] are sometimes referred to herein as the "***Bankruptcy Cases***." Further, on August 17, 2017, the Court entered its *Order Resolving Show Cause Order, Converting Chapter 11 Case to Chapter 7 Case, and Modifying Consolidation Order* [Dkt. # 908] to reflect that the World Health Jets LLC case [Case No. 16-00296-NPO] was converted to a chapter 7 case and the prior *Order Granting Motion of World Health Jets LLC for Order Directing Joint Administration of Affiliated Cases Pursuant to Bankruptcy Rule 1015(b)* [Dkt. # 114] was modified so that the World Health Jets LLC case was no longer administratively consolidated in the chapter 11 case of Opus Management Group Jackson LLC, Case No. 16-00297-NPO.

individual Bankruptcy Cases in its *Seventh Interim and Final Application of Butler Snow LLP for Allowance of Administrative Claim for Compensation and Reimbursement of Necessary Expenses* [Dkt. # 1046] (the "***Final Application***"). The Applicant's Memorandum is in support of the Final Application and the billing protocols and procedures used during the entirety of these Bankruptcy Cases:

## Background Facts

1. The Debtors filed their voluntary petitions under chapter 11 of the Bankruptcy Code on February 2, 2016, in the United States Bankruptcy Court for the Southern District of Mississippi.

2. Pursuant to the *Order Granting Applications of Debtors to Employ Butler Snow LLP as Bankruptcy Counsel* [Dkt. # 189] (the "***Employment Order***"), the Debtors were authorized to employ and retain Butler Snow as their bankruptcy counsel to prosecute the Bankruptcy Cases and all related matters thereto and to render necessary legal services to the Debtors during their Bankruptcy Cases, as more fully described in the Employment Order.

3. The Employment Order provided that Butler Snow would be entitled to receive reasonable compensation and to receive reimbursement of actual, necessary expenses after notice and a hearing as contemplated by Section 330 of the Bankruptcy Code and Rule 2016, and any other applicable or related statutes and rules. The Employment Order also provided that any application for compensation and reimbursement for expenses filed by Butler Snow herein shall set forth the date of entry of all previous orders allowing compensation and expenses and the amounts so allowed.

4. On information and belief, Farm 007 is the majority owner of the six Debtors. According to the latest information provided to counsel for the Debtors, Farm 007 owns 100% of

Rx Pro Pharmacy & Compounding, Inc., Opus Rx, LLC, Opus Management Group Jackson LLC, and Estonna Management LLC, 97% of Care Rx Pharmacy Group, LLC, and 85% of Rx Pro of Mississippi, Inc. Barrett is the 100% owner of World Health Jets LLC.

5. Prior to filing the Final Application, Butler Snow had filed six Applications for Interim Compensation (collectively, the "*Fee Applications*"), as follows:

| Application | Docket No. | Date Filed | Period Covered |
|---|---|---|---|
| First | Dkt. # 465 | July 26, 2016 | February 2, 2016 to June 30, 2016 |
| Second | Dkt. # 571 | November 21, 2016 | July 1, 2016 to October 31, 2016 |
| Third | Dkt. # 665 | February 15, 2017 | November 1, 2016 to January 31, 2017 |
| Fourth | Dkt. # 828 | June 1, 2017 | February 1, 2017, to April 30, 2017 |
| Fifth | Dkt. # 898 | August 10, 2017 | May 1, 2017, to July 31, 2017 |
| Sixth | Dkt. # 990 | November 13, 2017 | August 1, 2017, to October 31, 2017 |

6. Prior to filing the Final Application, the Bankruptcy Court had entered Orders approving each of the six Applications for Interim Compensation (collectively, the "*Compensation Orders*"), as follows:

| Order on Application for Period | Docket No. | Entry Date of Order |
|---|---|---|
| First Fee Period | Dkt. # 518 | September 14, 2016 |
| Second Fee Period | Dkt. # 608 | December 16, 2016 |
| Third Fee Period | Dkt. # 751 | March 29, 2017 |
| Fourth Fee Period | Dkt. # 840 | June 27, 2017 |
| Fifth Fee Period | Dkt. # 937 | September 12, 2017 |
| Sixth Fee Period | Dkt. # 1043 | December 19, 2017 |

7. Although the first Application did not include a proposed allocation of fees and expenses among the Debtors in this jointly administered case, at the direction of the United States Trustee, Butler Snow allocated its fees and expenses among the Debtors based on a general review of its time entries for the First Fee Period. That allocation was reflected in the *Agreed Order Granting, in Part, First Application of Butler Snow LLP for Interim Allowance of*

*Administrative Claim for Compensation and Reimbursement of Expenses* [Dkt. # 518] (the "***First Compensation Order***").

8. The First Compensation Order specifically provided:

> Butler Snow has represented that the allocation of the attorneys' fees among the Bankruptcy Cases was not pursuant to a pre-determined agreement among the Debtors and Butler Snow, and Butler Snow did not have a code for each Debtor, but rather the allocation was made by Butler Snow based on what it believed was a fair allocation of the workload of the work related to each of the seven Debtors. The Court finds that this allocation is reasonable, rational, and appropriate under the circumstances.

First Compensation Order, ¶ 10, at 4 of 8.

9. Neither Barrett nor Farm 007 objected to the First Application or appealed from the entry of the First Compensation Order.

10. In each subsequent Application, Butler Snow set forth its proposed allocation of fees and expenses among the Debtors. Each subsequent Application also contained the following or similar language:

> The proposed allocation of the attorneys' fees among the Bankruptcy Cases was not pursuant to a pre-determined agreement among the Debtors and Butler Snow, and Butler Snow did not have a code for each Debtor, but rather the allocation was made by Butler Snow based on what it believed was a fair allocation of the services rendered on behalf of each of the [seven/six] Debtors. Butler Snow believes that this allocation is reasonable, rational, and appropriate under the circumstances.

11. The allocation of fees and expenses among the Debtors varied from Application to Application, depending on the services that were rendered during that particular fee period. The input of the Debtors' management, *i.e.*, Jack West, the Debtors' Operations Manager, concerning the allocation of fees and expenses also was sought prior to the filing of each subsequent Application. For some Applications, the Debtors' management responded and initial allocations were adjusted based on management's input. For the remaining Applications, Butler Snow never received any comments from the Debtors' management on the proposed allocations.

12. In each of the Compensation Orders, the Court approved not only the amount of fees and expenses on an interim basis, but also the allocation of fees. In each of the Compensation Orders, the Court found that the proposed, "allocation is reasonable, rational, and appropriate under the circumstances."

13. Neither Barrett nor Farm 007 objected to the any of the other Fee Applications or appealed from the entry of any of the other Compensation Orders.

14. Barrett and Farm 007 frame the issues before the Court in the Objectors' Memorandum as follows:

> There are two issues addressed herein that were raised in the Objection. First, the failure of Butler Snow to allocate its time and expenses to each of the seven separate debtors in these jointly-administered cases; and second, Butler Snow's allocation of attorneys' fees and expenses on an arbitrary basis.

Objectors' Memorandum, at 2.

15. A review of the Record, however, reflects, contrary to the assertions of Barrett and Farm 007: (1) Butler Snow has allocated its time and expenses to each of the six or seven separate debtors in these jointly-administered Bankruptcy Cases; and (2) Butler Snow's allocation of attorneys' fees and expenses was not on an arbitrary basis, but with each of the Applications, the "allocation [was] reasonable, rational, and appropriate under the circumstances."

### Argument

16. Section 330(a) of the Bankruptcy Code permits the bankruptcy court to award "reasonable" compensation to professional persons employed pursuant to Sections 327 or 1103. A determination of reasonableness under Section 330(a) is within the court's discretion. *See, e.g., In the Matter of Pilgrim's Pride Corp.*, 690 F.3d 650, 656 fn. 5 (5th Cir. 2012) ("[T]his Court emphasizes that the bankruptcy court has broad discretion in determining compensation

for services performed in a bankruptcy proceeding and that its exercise of discretion will not be disturbed unless it has been abused. The bankruptcy court is more familiar with the actual services performed and 'has a far better means of knowing what is just and reasonable than an appellate court can have.'" (citations omitted), citing *In re Lawler*, 807 F.2d 1207, 1211 (5th Cir. 1987)).

17. In determining the amount of reasonable compensation to be awarded to a professional, "the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors . . . " 11U.S.C. § 330(a)(3). The issue currently before this Court, however, is not the reasonableness of the amount of the professional fees sought by Butler Snow, but whether those fees, as allocated in each of the Compensation Orders, has been allocated fairly among these six Debtors.

18. Neither Section 330 of the Bankruptcy Code nor Rule 2016 of the Bankruptcy Rules requires an entry-by-entry allocation among the Debtors in a jointly administered case. Barrett and Farm 007 have not cited any authority for their contention that an entry-by-entry allocation among the Debtors in a jointly administered case is required by Section 330 of the Bankruptcy Code or Bankruptcy Rule 2016.

19. Rather, an allocation of fees and expenses among jointly administered cases is permissible if the allocation is reasonable and an allocation has been used throughout the bankruptcy case. In *In re Burival*, 2009 WL 2501118 (Bankr. D. Neb. 2009), in overruling an objection raised to a final fee application related to the allocation of attorney's fees and expenses between the two jointly administered cases, the Court noted: "Throughout this case, Debtors have proposed an 80/20 allocation and no party has objected until now. However, the objections

do not propose a different allocation. This Court is not inclined to change at this late date what has been an accepted practice in this case." *Id.*, at *4.

20. *In re Tropicana Entertainment, LLC*, 2014 WL 7450610 (Bankr. D. Del. 2014), subsequent determination, 2016 WL 74788 (Bankr. D. Del. 2016), a jointly administered Chapter 11 case involving numerous related debtors, is instructive. Although there was an agreed allocation of management services fees among the Debtors,[2] there was no agreed allocation of professional fees. Each of the eight professional services firm submitted its own proposed allocation of its fees between the OpCo Debtors and the LandCo Debtors,[3] while the LandCo Debtors proposed that 7.2% be allocated to them, and the OpCo Debtors proposed that 50% be allocated to the LandCo Debtors. The LandCo Debtors contended that its own detailed analysis of all of the Professionals' invoices by identifying time entries as OpCo time, LandCo time, or "unallocated" time resulted in the 7.2% allocation, while the OpCo Debtors asserted that the Professionals' time entries reflected "the reality that the Debtors operated as a consolidated enterprise and that there was no 'rational method' to separate most of the work performed in the bankruptcy case among the Debtors." *Id.* at *5. The basis for the position of the OpCo Debtors was that "most of the Professionals' time in this case involved general bankruptcy issues that benefitted all of the Debtors. The Steering Committee noted that a single management team operated all of the Debtors prior to the Plans' effective dates." *Id*. The Court, "[t]aking into account the various positions of all parties, and acknowledging the difficulty, not only for the

---

[2] There was a reimbursement obligation to the Operating Company Debtors ("*Opco Debtors*") by the Land Company Debtors ("*LandCo Debtors*") of the costs and expenses incurred by the OpCo Debtors that were directly attributable to the LandCo Debtors' operations, as well as the payment of a management services fee to the OpCo Debtors by the LandCo Debtors for corporate expenses that were not directly attributable to either the LandCo Debtors or the OpCo Debtors in an amount equal to seventeen percent (17%) of such corporate expenses (the "*Management Services Fee*"). The percentage of indirect costs that represented the Management Services Fee was based on the relative aggregate revenues of the LandCo Debtors as compared to the aggregate revenues of the OpCo Debtors.

[3] The proposed fees to be allocated to LandCo by the eight professional firms varied from 0.0% to 29.3%.

Professionals, but for the Court as well, of reaching a fair and principled result, and recognizing that many services benefitted both Debtor groups," allocated the Professional Fees 75% to the OpCo Debtors and 25% to the LandCo Debtors. *Id.* at *6.

21. Here, the allocation methodology used by Butler Snow was acceptable to the United States Trustee, which exercises oversight of, among other things, professional fee applications. Further, as stated earlier, the Court found in each of the in the previous Compensation Orders that the allocations of fees and expenses among the Debtors was "reasonable, rational, and appropriate under the circumstances." Additionally, neither Barrett nor Farm 007 objected to any of these Fee Applications (either on the merits of the allocations or the methodology used for allocations) or appealed from the entry of any Compensation Order.

22. At first glance, it may appear that the "law of the case" doctrine may bar the Objection, but the Fifth Circuit, in *In the Matter of Evangeline Refining Company*, 890 F.2d 1312, 1321-1322 (5th Cir. 1989), held otherwise. The Court noted that the "law of the case" merely expressed "the practice of courts generally to refuse to reopen what has been decided, not a limit to their power" and that the doctrine of law of the case "is discretionary and not an inexorable command that rigidly binds a court. An essential element for the "law of the case" doctrine is that it applies to a final ruling – "a functional finality which 'seeks to identify a determination intended to put a matter to rest.' Interim fee awards are not final determinations intended to put a matter to rest. Rather, they are interlocutory and reviewable, and are intended only to provide some interim relief from the economic hardships of subsidizing litigation." *Id.* (citations omitted).

23. Contrary to the assertions of Barrett and Farm 007, Butler Snow does not seek to have one or more of the jointly administered bankruptcy estates pay the administrative fees of

other bankruptcy estates. Because these Bankruptcy Cases were jointly administered and not substantively consolidated, with each Application Butler Snow proposed allocations to each Bankruptcy Case of the fees and expenses that it believed were properly attributable to each Bankruptcy Case. Butler Snow does not seek to have one bankruptcy estate pay the expenses properly attributable to another bankruptcy estate. Therefore, the cases cited by Barrett and Farm 007 that one jointly administered bankruptcy estate cannot properly pay the expenses of another jointly administered estate are irrelevant to the issue before the Court. That issue is whether the allocations of fees and expenses among the Debtors as reflected in each of the Compensation Orders are fair and reasonable.

24.    Barrett and Farm 007 also assert that "[t]he allocation of fees to each debtor were clearly made to maximize Butler Snow's recovery of attorney fees." Objectors' Memorandum, at 8. In support of this allegation, Barrett and Farm 007 cite several illustrations of allocations:

(a)    "With one exception (the 2nd Interim Order), in each of the Interim Orders, Estonna and Rx Pro of Mississippi bear the burden of paying 35% to 50% of the attorneys' fees and expenses. Those two cases have always been solvent and have always projected a return to equity holders." Objectors' Memorandum, at 10.

**Response**: While Estonna has always been the most solvent of the bankruptcy estates, from the outset of the bankruptcy case, there have been numerous claims and other issues to be resolved in Rx Pro of Mississippi, Inc. including the claims of : (i) Dr. John Adams; (ii) John Kendle; (iii) Kobayashi Capital Partners; (iv) Sallyport; (v) Third Party Station; (vi) Third Party Network; (vii) ExpressScripts; (viii) World Health Industries; (ix) Prime Therapeutics; and (x) Smith Drug. Consequently, to say that the

Rx Pro of Mississippi, Inc. case was always solvent and "always projected a return to equity holders" is an overstatement.

The fees allocated to Estonna Management, LLC have always been on the lower side compared to the other Pharmacy Debtors:[4] 10%, 10%, 17.5%, 20%, 15%, and 15% for the each of the six Applications respectively. If "[t]he allocation of fees to each debtor were clearly made to maximize Butler Snow's recovery of attorney fees" then Butler Snow would have increased the percentage allocated to Estonna Management, LLC, the most solvent Debtor.

As of the time of the filing of the Final Application, there were unpaid fees and expenses, approved by the Bankruptcy Court on an interim basis and owed to Butler Snow as follows:

| **Debtor** | **Amount Remaining Unpaid** |
| --- | --- |
| Rx Pro Pharmacy & Compounding, Inc. | $ 28,682.14 |
| Care Rx Pharmacy Group, LLC | $131,901.44 |
| Estonna Management, LLC | $ 26,682.14 |
| Rx Pro of Mississippi, Inc. | $ 47,803.56 |
| Opus Rx, LLC | $ 93,929.69 |
| Opus Management Group Jackson LLC | $ 62,046.78 |
| **Total** | $ 391,045.75 |

For Barrett and Farm 007 to assert that the allocations of fees were made to maximize Butler Snow's recovery of attorney fees is without basis and contrary to the facts.

(b) "In the 1st and 2nd Interim Orders, Opus Management Group Jackson ("OMGJ") bears 25% of the burden. Presumably, this allocation is related to the cash on

---

[4] The five "Pharmacy Debtors" are Rx Pro Pharmacy & Compounding, Inc.; Care Rx Pharmacy Group, LLC; Estonna Management, LLC; Rx Pro of Mississippi, Inc.; and Opus Rx, LLC.

hand of OMGJ in the first two interim periods. OMGJ had funds on hand to pay attorneys' fees. In later periods – it did not, and the allocation was lowered."

**Response**: During the early portion of the Bankruptcy Cases, Opus Management Group Jackson LLC continued to perform numerous administrative and management functions for the five Pharmacy Debtors for which it was compensated by the Pharmacy Debtors.[5] Later in the case, after the sale of the assets of the Opus Management Group Jackson LLC and the Pharmacy Debtors, there were no more operating Debtor Pharmacies. At that time, the Pharmacy Debtors ceased paying Opus Management Group Jackson LLC for its administrative and management services. Following the closing of the sales of their assets, the focus of Opus Management Group Jackson LLC and the five Pharmacy Debtors shifted to claims objections and asset recovery. In that regard, Opus Management Group Jackson LLC had fewer claims to resolve and fewer assets to recover than did most of the Debtor Pharmacies.

During 2017, Opus Management Group Jackson LLC sought to recover on two significant assets: (i) avoidance actions against Farm 007 for pre-petition transfers in the total amount of $462,000.00 (see *Findings of Fact, Conclusions of Law, and Order Confirming First Amended Chapter 11 Plan of Opus Management Group Jackson LLC* [Dkt. # 1016], Schedule 7.3.1, at 101): and (ii) $30,271.46 for payments advanced by Opus Management Group Jackson LLC on behalf of various Barrett-related pharmacies (*Id.* at Schedule 7.3.1, at 103).

---

[5] Opus Management Group Jackson LLC provided administrative and management-related services for each of the other Debtors, including the Pharmacy Debtors. This included providing health and other insurance, providing legal services, and financial and accounting services for each of the Debtors. For the provision of these administrative and management services, Opus Management Group Jackson LLC charged each of the Debtor Pharmacies 20 percent of their gross revenues. The Debtor Pharmacies sometimes paid these fees by transfers of fund balances, and sometimes there were due-to and due-from entries on the financial records of each of the Debtors. This relationship was possible because of the significant degree of common ownership of the Debtors.

- 11 -

(c) "In the 2nd interim order, World Health Jets ("WHJ") is allocated 25% of the fees with an asterisk added indicating that reads 'to be paid by Chad Barrett' at a time when Butler Snow believed that Mr. Barrett would pay fees allocated to WHJ. When Butler Snow no longer believed that Mr. Barrett would pay the WHJ fees, the allocations to WHJ dropped to 5% in the 3rd and 4th interim orders."

**Response:** A review of the Second Application reflects the proposed 25% allocation to Barrett. That allocation was made based on the time expended with respect to: (i) the settlement with Origin Bank and (ii) the sales process for the 2013 Embraer EMB-500 Phenom 100 (the "*Airplane*").

The settlement with Origin Bank, which was holding additional collateral of Farm 007 for the indebtedness related to the Airplane, was ultimately reflected in the *Agreed Order Granting Joint Motion for an Order (1) Approving Settlement and Compromise and (2) Approving Agreed Order Lifting the Automatic Stay and for Other Related Relief* [Dkt. # 485].

As noted in the *Response to Origin Bank's Motion to Lift Automatic Stay and Abandon Collateral and for Other Relief* [Dkt. # 225], the Debtors believed that a Section 363 Sales Process would be mutually beneficial to all Parties and was the best way to maximize the Airplane's value, but the Section 363 Sales Process must have the consent of all Parties. Absent consent for a Section 363 Sales Process from all Parties, the Debtors had no objection to the entry of an Order that terminated, annulled, modified, and/or conditioned the automatic stay of 11 U.S.C. § 362 as to the World Health Jets Bankruptcy Case and the Airplane so that Origin could repossess and sell the Airplane at a foreclosure sale. *Id.*, at ¶¶ 13-14. Subsequently, all parties (World Health Jets LLC,

Barrett, Origin Bank, Farm 007, and the United States) agreed to a Section 363 Sales Process for the Airplane, and World Health Jets LLC embarked on that sales process for the Airplane.

In light of services rendered in these two areas, Butler Snow believed that a 25% allocation to World Health Jets LLC for the Second Fee Period was appropriate. This 25% allocation to World Health Jets LLC was reflected in Butler Snow's Second Fee Application [Dkt. # 571] which was filed on November 21, 2016, and which covered the period of July 1, 2016, to October 31, 2016. This 25% allocation was also reflected in the Compensation Order for this Second Fee Application [Dkt. # 608], which was entered on December 16, 2016.

Further, counsel for Barrett confirmed to undersigned counsel for World Health Jets LLC that Mr. Barrett agreed to be responsible for the attorney's fees World Health Jets incurred in connection with the sale of the aircraft, which were approximately $25,000 through Butler Snow's first fee application. Mr. Barrett, however, never paid any attorneys' fee related to World Health Jets LLC.

The time devoted to World Health Jets LLC after the Second Fee Period was substantially less than the time devoted during the First Fee Period and the Second Fee Period, and is reflected in the lower percentages allocated to World Health Jets LLC: 5% for the Third Fee Period and 5% for the Fourth Fee Period.

25. Bankruptcy Courts are courts of equity. *See, e.g., In re Evans*, 2011 WL 4712180 (Bankr. S.D. Miss. 2011) ("as courts of equity, bankruptcy courts have broad authority to modify creditor/debtor relationships" (citing *United States v. Energy Res. Co., Inc.*, 495 U.S. 545 (1990).

26. As a court of equity, this Court properly can consider all that has transpired during these jointly administered Bankruptcy Cases, including the Applications and the Compensation Orders. "Relying on rulings made in prior proceedings in a bankruptcy case is entirely appropriate, and necessary, in reaching decisions in subsequent matters with the caveat that the rights of absent parties must be protected. . . . The particular proceeding before the court, Frank & Company's final fee application, is a prime example of the need to consider the entire record of the case." *In re United Refuse LLC*, 2007 WL 1695337, at *5-6 (Bankr. E.D. Va. 2007).

27. In reviewing the entire record of these cases, this Court should note, among other things, that prior to filing its Final Application, Butler Snow filed six Applications. With each Application, both Barrett and Farm 007, as equity owners of the Debtors, had a full and fair opportunity to object to each Application and to raise an objection either on the merits or with respect to the proposed allocation at the time of the filing of each Application. On each instance, they did not object. Barrett and Farm 007 have been fully involved in these proceedings, and represented by their own counsel. They should not be permitted to assert at this late date objections that they could have raised earlier in the Bankruptcy Cases.

## Conclusion

Section 330(a) of the Bankruptcy Code permits the bankruptcy court to award reasonable compensation to professional persons employed pursuant to Sections 327 or 1103. A determination of reasonableness under Section 330(a) of the Bankruptcy Code is within the court's broad discretion. This Court has found that the allocation of fees and expenses among the Debtors in each of the six Compensation Orders was "reasonable, rational, and appropriate under the circumstances." Barrett and Farm 007, after having voiced no objection to these

allocations or the methodology used, still have presented no reason to change the Court's prior determination with respect to the appropriateness of any of these allocations. For these reasons, Butler Snow submits that no entry-by-entry allocation should be required.

    THIS, the 15th day of February 2018.

                              Respectfully submitted,

                              By: */s/ Stephen W. Rosenblatt*
                              Stephen W. Rosenblatt (Miss. Bar No. 5676)
                              Christopher R. Maddux (Miss. Bar No. 100501)
                              Thomas M. Hewitt (Miss. Bar No. 104589)
                              BUTLER SNOW LLP
                              1020 Highland Colony Parkway, Suite 1400
                              Ridgeland, MS 39157
                              Telephone: (601) 948-5711
                              steve.rosenblatt@butlersnow.com
                              chris.maddux@butlersnow.com
                              thomas.hewitt@butlersnow.com

                              ATTORNEYS FOR THE DEBTORS

## CERTIFICATE OF SERVICE

I certify that the foregoing pleading was filed electronically through the Court's ECF system and served electronically on all parties enlisted to receive service electronically and was separately served by e-mail on the following:

Ronald H. McAlpin, Esq.
Trial Attorney, Office of the United States Trustee
501 East Court Street, Suite 6-430
Jackson, MS 39201-5002
Ronald.McAlpin@usdoj.gov

Office of the United States Trustee
501 East Court Street, Suite 6-430
Jackson, MS 39201-5002
USTPRegion05.AB.ECF@usdoj.gov

John D. Moore, Esq.
Law Offices of John D. Moore, P.A.
301 Highland Park Cove, Suite B
Ridgeland, MS 39157
john@johndmoorepa.com

Attorney for Mitchell Chad Barrett and Farm 007 Holdings, LLC

SO CERTIFIED, this the 15th day of February 2018.

> */s/ Stephen W. Rosenblatt*
> STEPHEN W. ROSENBLATT

40601673